UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

MARIANA NDUDZI,

    **Plaintiff-Petitioner,**

v.              **Case No. SA-20-CV-0492-JKP**

RAY CASTRO, Warden of South Texas
Detention Center, et al.,

    **Defendants-Respondents.**

## MEMORANDUM OPINION AND ORDER

The Court has under consideration *Respondents' Motion to Dismiss the Habeas Petition* (ECF No. 11). With Petitioner's response (ECF No. 12) and Respondents' reply (ECF No. 13), the motion is ripe for ruling.[1] Respondents have also filed a *Notice of Supplemental Authority* (ECF No. 14) to provide another case from outside the Western District of Texas that supports their position. For the reasons that follow, the Court grants the motion in part and denies it in part.

## I. BACKGROUND

On April 22, 2020, while detained in the South Texas Detention Complex ("STDC") located in Pearsall, Texas, Mariana Ndudzi, by and through counsel, filed an *Emergency Petition for a Writ of Habeas Corpus and Declaratory Relief* (ECF No. 1) asserting jurisdiction under the general grant of habeas authority, 28 U.S.C. § 2241, and under federal question jurisdiction, 28 U.S.C. § 1331.[2] She paid the $5 fee for filing a habeas action.

---

[1] Although habeas and non-habeas jurisdiction is invoked in this action, the Court utilizes party designations of Petitioner and Respondent that are associated with habeas actions because, as discussed more fully later in this Memorandum Opinion and Order, jurisdiction over this action is presently limited to habeas jurisdiction.

[2] Petitioner also asserts jurisdiction under the Suspension Clause of the United States Constitution and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, but that Act does not provide an independent basis for jurisdiction, *see Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 197 (2014); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950); *In re B-727 Aircraft Serial No. 21010*, 272 F.3d 264, 270 (5th Cir. 2001); *Northfield*

Petitioner, an Angolan asylum-seeker fleeing state-sponsored gender violence, has been in Immigration and Customs Enforcement ("ICE") detention for more than a year. ECF No. 1 at 1. She asserts two claims: (1) a violation of substantive due process under the Fifth Amendment due to the conditions of her confinement and failure to provide adequate medical care; (2) a violation of procedural due process under the Fifth Amendment as applied to her due to her detention that has become unconstitutionally prolonged. *Id.* 45-49. She seeks the issuance of a writ of habeas corpus and an order for her immediate release from STDC with appropriate precautionary public health measures on grounds that her continued prolonged detention violates due process. *Id.* at 1, 49. She seeks a declaration that Respondents' continued immigration detention of individuals at increased risk for severe illness, including persons of any age with underlying medical conditions that may increase the risk of infection from COVID-19, violates due process. *Id.* at 49. She asks the Court to require ICE to release the individual facility plans mandated under its detention standards that address the management of infectious and communicable diseases. *Id.* If the Court decides that immediate release is not appropriate, she seeks release under an alternative to detention, such as an ankle monitor. *Id.* at 50. Finally, she seeks an award of costs and reasonable attorneys' fees. *Id.*

Given the emergency nature of the filing based upon its content, the Court found that the circumstances warranted an expedited response. *See* ECF No. 4. The Court thus ordered Respondents to file a response to the petition within fourteen days. *See id.* On May 12, 2020, Respondents filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and (6). *See* ECF No. 11. Within their motion, Respondents reveal that Petitioner has been transferred to a detention facility in Laredo, Texas, which lies within the Southern District of Texas. In response, Petitioner urges the Court to

---

*Ins. Co. v. Rodriguez*, 261 F. Supp. 3d 705, 708 (W.D. Tex. 2017), and the Suspension Clause relates to habeas jurisdiction.

not find her claims moot and, in some respects, seems to refocus claims on her new holding facility. Respondents have filed a reply brief and the motion is ripe for ruling.

## II. NATURE OF ACTION AND CLAIMS

As an initial matter, the Court addresses the nature of this action and the claims asserted. Petitioner, through counsel, filed this case as a habeas action under 28 U.S.C. § 2241 while also invoking federal question jurisdiction under 28 U.S.C. § 1331. But despite the apparent mixed nature of the jurisdiction asserted, Petitioner has only paid the $5 filing fee permitted for habeas applications. The statute governing filing fees in district court clearly states: "The clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court, whether by original process, removal or otherwise, to pay a filing fee of $350, except that on application for a writ of habeas corpus the filing fee shall be $5." 28 U.S.C. § 1914(a). The payment of the $5 habeas filing fee relegates this action to habeas relief only. One cannot pay the minimal habeas fee and pursue non-habeas relief.[3]

Not only is the fee structure different for habeas and non-habeas actions, there are also often vast procedural differences between the two types of actions. *See Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 269-71 (1978) (recognizing some differences); *Banister v. Davis*, ___ S. Ct. ___, ___, No. 18-6943, 2020 WL 2814300, at *12 (U.S. June 1, 2020) (Alito, J. dissenting) (stating "[l]et's count some of the ways in which habeas proceedings deviate from the Civil Rules" and then identifying numerous differences). In contrast to a non-habeas action, habeas is governed by several statutes relevant here. The jurisdictional grant of authority to grant a writ of habeas corpus lies within 28 U.S.C. § 2241 and it extends to those "in custody in violation of the

---

[3] Normally, the Court would either (1) sever the non-habeas claims from the habeas ones and have the plaintiff separately pursue the severed claims in a different action or (2) alert the Plaintiff-Petitioner of the deficiency and provide an opportunity to correct it. For reasons that will become apparent later in this Memorandum Opinion and Order, neither action is warranted in this case.

Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c)(3). Section 2242 governs the form and contents of applications for a writ of habeas corpus. Section 2243 governs issuance of the writ and provides that "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." Section 2246 governs presentation of evidence, including via affidavit. Section 2247 addresses documentary evidence. And Section 2248 addresses the conclusiveness of allegations of the parties.

The proper respondent for a habeas action is "the person who has custody over [the petitioner]," 28 U.S.C. § 2242, whereas a defendant in a non-habeas action would be someone who has wronged the plaintiff. In fact, "in habeas challenges to present physical confinement – 'core challenges' – the default rule is that the proper respondent is the warden of the facility where the prisoner [(or detainee)] is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Because the custodian may not be a proper defendant and most defendants would not be the proper respondent, a mixed habeas and non-habeas action creates potential confusion.

In addition, special rules apply to habeas petitions filed under 28 U.S.C. § 2254 (applicable to state prisoners). *See* Rule 1(a) of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"). Moreover, Habeas Rule 1(b) provides that the federal district courts "may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a)." The Habeas Rules provide "practical instruction regarding the appropriate procedures for responding to a federal habeas corpus petition." *See White v. Cockrell*, No. 3:00-CV-1951-L, 2001 WL 1335779, at *2 (N.D. Tex. Oct. 19, 2001) (accepting recommendation of Mag. J. setting out procedures for habeas actions under § 2254).

Further, the Habeas Rules may supplant the Federal Rules of Civil Procedure. *See* Habeas Rule 12 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with

4

any statutory provisions or these rules, may be applied, to a proceeding under these rules."); Fed. R. Civ. P. 81(a)(4) (recognizing that the Federal Rules of Civil Procedure "apply to proceedings for habeas corpus . . . to the extent that the practice in those proceedings: (A) is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has previously conformed to the practice in civil actions."). As clarified in the Advisory Committee Notes to Rule 12 (formerly Rule 11):

> Rule 11 [(now 12)]. . . allow[s] the court considering the petition to use any of the rules of civil procedure (unless inconsistent with these rules of habeas corpus) when in its discretion the court decides they are appropriate under the circumstances of the particular case. The court does not have to rigidly apply rules which would be inconsistent or inequitable in the overall framework of habeas corpus. Rule [12] merely recognizes and affirms their discretionary power to use their judgment in promoting the ends of justice.

When a filing contains both habeas and non-habeas claims, "the district court should separate the claims and decide the [non-habeas] claims" separately from the habeas ones given the differences between the two types of claims. *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam) (citing *Serio v. Members of La. State Bd. of Pardons*, 821 F.2d 1112, 1119 (5th Cir. 1987)). As a practical matter, this separation entails severing the non-habeas claims and permitting the petitioner/plaintiff to pursue them in a separate case. *See Milton v. Davis*, No. 1:17-CV-085-C, 2018 WL 10447170, at *2 (N.D. Tex. Apr. 20, 2018); *Shumpert v. Gaunt*, No. W-16-CA-101-RP, 2016 WL 2859641, at *1 (W.D. Tex. May 16, 2016); *Dewey v. Quarterman*, No. CIV.A H-07-0394, 2007 WL 332986, at *3 (S.D. Tex. Jan. 31, 2007). Such severance is not warranted in this case. As addressed later, all non-habeas claims asserted in this action became moot when Petitioner was transferred to a different detention facility. Given that transfer, asserted habeas claims are the only potentially live claims that remain in this action.

As highlighted in *White*, one particularly significant difference between habeas and a typical civil action is the manner in which the respondent or defendant may respond to the initial

filing. *See* 2001 WL 1335779, at *3-4. Whereas a defendant in a typical non-habeas action has the choice to file an answer or other response, like a motion to dismiss, respondents in habeas cases may be limited by court order as to the nature of their response. *See* Habeas Rule 4 (expressly providing for judicial control over the response to be filed: "If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response, within a fixed time, or to take other action the judge may order."). Here, given the apparent mixed nature of Petitioner's filing and the general practice in the Western District of Texas, the Court left the nature of the government's response to its discretion. Thus, although a motion to dismiss may not always be an appropriate response to a habeas petition,[4] the filed motion to dismiss constitutes a proper response to the Court's order given the apparent mixed nature of the initial filing and the order asking for a response from Respondents without limiting the nature of the response.

Through the briefing on the motion, the parties disagree as to whether conditions-of-confinement claims may be asserted through a habeas action. *Compare* Mot. at 7-8 *with* Resp. at 7-9. It has long been held that "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a [non-habeas] action." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (internal citation omitted). Subsequently, the Supreme Court has expressly noted that it has

---

[4] *See Browder*, 434 U.S. at 269 n.14 (recognizing that "[t]he custodian's response to a habeas corpus petition is not like a motion to dismiss"); *Banister*, ___ S. Ct. at ___, 2020 WL 2814300, at *12 (U.S. June 1, 2020) (Alito, J. dissenting) ("Another civil mainstay, the Rule 12(b)(6) motion to dismiss, also has no place in habeas."); *Miramontes v. Driver*, 243 F. App'x 855, 856 (5th Cir. 2007) (per curiam) (explaining that "[a] motion to dismiss for failure to state a claim is an inappropriate practice in habeas"); *Odom v. West*, 174 F.3d 198, 198 (5th Cir. 1999) (per curiam) (holding that Rule 12(b)(6) "is inappropriate practice in habeas corpus"); *Williams v. Willis*, No. EP-17-CV-184-KC, 2018 WL 852381, at *5 (W.D. Tex. Feb. 13, 2018) (recognizing that "it is generally inappropriate to grant a motion to dismiss under Rule 12(b)(6) in a habeas matter"), *aff'd*, 765 F. App'x 83 (5th Cir. 2019); *Solomon v. Chapa*, No. EP-13-CV-111-PRM, 2013 WL 8479865, at *3 & n.45 (W.D. Tex. Dec. 27, 2013) (recognizing *Miramontes* while also recognizing that a Rule 12(b)(6) motion for failure to exhaust administrative remedies may be appropriate in habeas); *Lee v. Quarterman*, No. CIV. A. C-07-476, 2008 WL 1696879, at *3 (S.D. Tex. Apr. 9, 2008) (recognizing that "[i]n habeas practice, a motion to dismiss for failure to exhaust pursuant to Rule 4 is the functional equivalent of a similar Rule 12(b)(6) motion in general civil practice").

"left open the question whether [detainees] might be able to challenge their confinement conditions via a petition for a writ of habeas corpus." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1862-63 (2017) (citing *Bell v. Wolfish*, 441 U.S. 520, 526, n.6 (1979) ("[W]e leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement")); *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making custody illegal.")).

And as the Fifth Circuit has more recently reiterated, "[t]ypically, habeas is used to challenge the fact or duration of confinement," whereas a non-habeas action is typically "used to challenge conditions of confinement." *Poree v. Collins*, 866 F.3d 235, 242-43 (5th Cir. 2017). But *Poree* recognized that the line between the two types of claims "is a blurry one." 866 F.3d at 243 (quoting *Cook v. Tex. Dep't of Crim. J. Transitional Planning Dep't*, 37 F.3d 166, 168 (5th Cir. 1994)). For "those improperly confined by the government," relief may be obtained through habeas or non-habeas means. *Id.* Which "vehicle to use depends on the nature of the claim and the type of relief requested," with "the instructive principle being that challenges to the fact or duration of confinement are properly brought under habeas, while challenges to the conditions of confinement are properly brought" through non-habeas means. *Id.*

Indeed, when a prisoner or detainee "is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Rodriguez*, 411 U.S. at 500. While "'fact or duration' claims must be brought under habeas, the Supreme Court has not foreclosed the use of habeas for other kinds of claims," and the Fifth Circuit itself has "been less clear" than other circuit courts as to whether habeas is limited only to challenges of "the fact or duration of confinement." *Poree*, 866 F.3d at 243-44.

7

When one is confined by the government and seeks "release from custody," the proper vehicle is a habeas petition. *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997). But the distinction between habeas and non-habeas is blurred when a challenge to "an unconstitutional condition of confinement . . . affects the timing of . . . release from custody." *Id*. The Fifth Circuit has thus "adopted a simple, bright-line rule for resolving such questions" – a non-habeas suit is the proper vehicle when "a favorable determination would not automatically entitle the detainee to accelerated release." *Id*. at 820-21 (citation and internal brackets and ellipses omitted).

There is no doubt that habeas typically does not encompass conditions-of-confinement claims. Nor is it an appropriate vehicle to seek a transfer to a different facility. *Hernandez v. Garrison*, 916 F.2d 291, 293 (5th Cir. 1990) (per curiam) (addressing § 2241 petition seeking transfer as relief for overcrowding, denial of medical treatment, and access to an adequate law library). But the recent pandemic caused by COVID-19 has caused some courts to permit immigration detainees to assert constitutional challenges to their conditions of confinement in habeas.[5]

---

[5] *Compare*, *e.g.*, *Dada v. Witte*, No. 1:20-CV-00458, 2020 WL 2614616, at *1 (W.D. La. May 22, 2020) (adopting in part a recommendation of Mag. J. on *de novo* review); *Juan E. M. v. Decker*, No. CV 20-4594 (KM), 2020 WL 2214586, at *5 (D.N.J. May 7, 2020) (agreeing "with the line of cases that have permitted conditions of confinement claims to proceed through a habeas petition"); *Favi v. Kolitwenzew*, No. 20-CV-2087, 2020 WL 2114566, at *6 (C.D. Ill. May 4, 2020) ("Courts across the country addressing similar claims of civil immigration detainees during the COVID-19 pandemic have found that such a claim can proceed in a habeas corpus petition."); *Thakker v. Doll*, No. 1:20-CV-480, 2020 WL 2025384, at *2 (M.D. Pa. Apr. 27, 2020) ("It is clear that federal courts, including the Third Circuit, have condoned conditions of confinement challenges through habeas.") (citing cases, including several recent ones resulting from the COVID-19 pandemic), *appeal filed*, No. 20-1906 (Apr. 28, 2020); *Vazquez Barrera v. Wolf*, No. 4:20-CV-1241, 2020 WL 1904497, at *4 (S.D. Tex. Apr. 17, 2020) (noting that "[t]he Court need not decide today whether conditions-of-confinement cases that do not challenge the 'fact or duration' of detention properly sound in habeas" while further noting that "Plaintiffs seek immediate release from detention because there are no conditions of confinement that are sufficient to prevent irreparable constitutional injury given the facts presented in their individual cases"); *Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL 1812850, at *2 (N.D. Cal. Apr. 9, 2020) (finding habeas the appropriate vehicle when a detainee "contests that his continued detention during the COVID-19 pandemic violates his substantive due process rights"); *Malam v. Adducci*, No. 20-10829, 2020 WL 1672662, at *3 (E.D. Mich. Apr. 5, 2020), as amended (Apr. 6, 2020) (permitting habeas claim under "§ 2241 because [detainee] seeks immediate release from confinement as a result of there being no conditions of confinement sufficient to prevent irreparable constitutional injury under the facts of her case") *with Archilla v. Witte*, No. 4:20-CV-00596-RDP-JHE, 2020 WL 2513648, at *13 (N.D. Ala. May 15, 2020) (relying on Eleventh Circuit precedent to find no habeas jurisdiction); *Matos v. Lopez Vega*, No. 20-CIV-60784-RAR, 2020 WL 2298775, at *5-6 (S.D. Fla. May 6, 2020) (same); *A.S.M. v. Donahue*, No. 7:20-CV-62 (CDL), 2020 WL 1847158, at *1 (M.D. Ga. Apr. 10, 2020) (same); *Sacal-Micha v. Longoria*, No. 1:20-CV-37, 2020 WL 1815691, at *5-6 & n.6 (S.D. Tex. Apr. 9, 2020) (finding that immigration detainee cannot rely on

The COVID-19 virus undoubtedly presents an atypical conditions situation. The resulting pandemic from the virus is well-known and has been the subject of thorough discussion and analysis. *See*, *e.g.*, *Dada v. Witte*, No. 1:20-CV-00458, unpub. recommendation at 4-6 (W.D. La. Apr. 30, 2020) (attached as Ex. 5 to response to motion to dismiss) *adopted in part by* 2020 WL 2614616 (W.D. La. May 22, 2020).[6] The Court thus has no need to set out in detail the realities presented by that virus. Moreover, as discussed more fully later, Petitioner's transfer in this case has rendered her COVID-19 claims moot as they relate to STDC whether or not she pursues such claims under habeas. Because the COVID-19 claims are moot, whether pursued through habeas or non-habeas channels, this Court need not determine whether an immigration detainee, like Petitioner, may pursue such claims through habeas.

### III. RESPONSE TO PETITION

Respondents have filed a motion to dismiss this action under Fed. R. Civ. P. 12(b)(1) and (6). Although use of Rule 12(b)(6) has been criticized in the context of habeas, *see*, *e.g.*, *Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 269 n.14 (1978) (holding that it is erroneous to view "a Rule 12(b)(6) motion [a]s an appropriate motion in a habeas corpus proceeding, and that upon denial of such a motion, the case should proceed through answer, discovery, and trial" and recognizing that "[t]he procedure for responding to the application for a writ of habeas corpus . . . is set forth in the habeas corpus statutes and, under Rule 81(a)(2), takes precedence over the Federal Rules"), use of Rule 12(b)(1) to raise jurisdictional issues appears consistent with the Habeas Rules and thus permissible through Habeas Rule 12 and Fed. R. Civ. P. 81(a)(4). Furthermore, Petitioner brought this action under both habeas and non-habeas jurisdiction. Courts, moreover, have the

---

habeas corpus for conditions-of-confinement claim based upon COVID-19 because the Fifth Circuit has not recognized such claim as arising under habeas).

[6] This recommendation also thoroughly sets out court decisions on both sides of whether COVID-19 claims are properly brought through habeas.

obligation to consider issues of jurisdiction whether or not asserted by the parties.

## A. **Jurisdiction**

Pursuant to Fed. R. Civ. P. 12(b)(1), Respondents seek to dismiss this case for lack of jurisdiction on grounds that (1) this action became moot when Petitioner was transferred to a different ICE detention facility in the interests of her safety and (2) 8 U.S.C. § 1252 precludes this Court from reviewing the decision to deny her parole.[7]

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). A jurisdictional dismissal "is not a determination of the merits and does not prevent the [party seeking federal jurisdiction] from pursuing a claim in a court that does have proper jurisdiction." *Ramming*, 281 F.3d at 161. When determining issues of subject matter jurisdiction, the courts "may consider outside matter attached to a motion to dismiss without first converting it into a motion for summary judgment." *State of Ala. ex rel. Baxley v. Woody*, 473 F.2d 10, 12 (5th Cir. 1973). With these general principles in mind, the Court addresses the jurisdictional contentions raised by Respondents.

---

[7] The Court has already addressed Respondents' argument that the conditions of confinement and inadequate medical care claims are not properly pursued through habeas corpus. There is no need to revisit the issue in the context of jurisdiction. And to the extent the claims can be brought through habeas, there is no issue as to waiver of sovereign immunity.

1. **Case or Controversy**

"Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court juris-diction, to 'Cases' and 'Controversies.'" *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980); *accord Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (as revised Feb. 9, 2016)). Not only must a live "case or controversy" exist when an action commences, but "the general principles of Art. III jurisdiction require that the plaintiff's personal stake in the litigation continue throughout the entirety of the litigation." *Sosna v. Iowa*, 419 U.S. 393, 402 (1975). "To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

As recognized by the Supreme Court, the case-or-controversy requirement encompasses the dual concepts of standing and mootness. *See id.* at 64-67. "The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Geraghty*, 445 U.S. at 397 (citation omitted); *accord Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 344 (5th Cir. 2013). "If an intervening circumstance deprives the plain-tiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (citation and internal quotation marks omitted). However, an action becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Campbell-Ewald Co.*, 136 S. Ct. at 669 (quoting *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)).

Respondents argue that this entire case is moot. But that is inaccurate. Sure, as previously mentioned, the non-habeas claims asserted in this action are moot. A transfer of an inmate or de-tainee may render "claims for declaratory and injunctive relief moot." *Herman v. Holiday*, 238

11

F.3d 660, 665 (5th Cir. 2001); *accord Cooper v. Sheriff, Lubbock Cty., Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991). And Petitioner's suggestion that she will be returned to STDC "is too speculative to warrant relief." *See Herman*, 238 F.3d at 665. Because all asserted non-habeas claims are moot, the Court declines to sever them and have Petitioner proceed with two actions in this Court.

Similarly, as mentioned earlier, Petitioner's transfer from STDC has also rendered her claims related to the COVID-19 moot even if she may pursue them through habeas. *See Vasquez Barrera v. Wolf*, No. 4:20-CV-1241, 2020 WL 2617939, at *2 (S.D. Tex. May 25, 2020); *but see Dada v. Witte*, No. 1:20-CV-00458, 2020 WL 2614616, at *2 (W.D. La. May 22, 2020) (transfer did not divest the court of habeas jurisdiction over COVID-19 claim of transferred petitioner). When the government has voluntarily transferred an immigration detainee who has alleged COVID-19 claims relating to his or her continued detention in the facility transferred from, "there is no longer a 'live' controversy between adversarial parties" related to the virus. *Vasquez Barrera*, 2020 WL 2617939, at *2.

The COVID-19 analysis is facility specific. *See Dada*, 2020 WL 2614616, at *2. In *Dada*, the Western District of Louisiana addressed COVID-19 habeas claims by multiple detainees housed in different facilities within the district. *See id.* at * 1-3. For one detainee, release was inappropriate because "there has never been a confirmed case of COVID-19 at [the complained-of facility]." *Id.* at *2. The court recognized that "courts throughout the country have not found a reason to release detainees where no outbreak has been found and the threat of infection is specu-lative." *Id.*; *but see, Favi v. Kolitwenzew*, No. 20-CV-2087, 2020 WL 2114566, at *11 (C.D. Ill. May 4, 2020) (noting that "many other courts have found that release was still appropriate despite there being no evidence of COVID-19 in the facilities in light the individual petitioner's health conditions and inadequate precautions taken at the facility to prevent potential introduction and spread of COVID-19").

However, for a detainee who the assigned magistrate judge had recommended be released but was transferred to a different facility before the district court considered the recommendation, the district court found that the transfer did not divest the court of jurisdiction to release the detainee as recommended. *Dada*, 2020 WL 2614616, at *2. In doing so, it noted that

> the objective [of habeas relief] may be in no way impaired or defeated by the removal of the prisoner from the territorial jurisdiction of the District Court. That end may be served and the decree of the court made effective if a respondent who has custody of the [petitioner] is within reach of the courts process.

*Id*. (quoting *Ex Parte Endo*, 323 U.S. 283, 307 (1944)).

> *Endo* stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's [or detainee's] release.

*Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).

In this case, the government transferred Petitioner prior to filing a response. The Court had not issued any ruling and there was no recommendation that she be released before the transfer. Such facts distinguish *Dada* to the extent it found the transfer there did not moot the action as to the transferred petitioner.

The transfers here and in *Vasquez Barrera* appear more consistent with Fifth Circuit precedent which recognizes that a transfer may render habeas conditions of confinement claims moot. *See Tamfu v. Ashcroft*, 54 F. App'x 408, 408 (5th Cir. 2002) (per curiam); *Hernandez*, 916 F.2d at 293. Through § 2241, the petitioner in *Hernandez* asserted conditions of confinement claims and sought a transfer to another facility. *See* 916 F.2d at 292-93. After stating that such a transfer "is not a proper subject for a habeas corpus petition," the Fifth Circuit affirmed the lower court's decision to find the claims moot because the petitioner had been transferred to another facility. *Id.* at 293. In *Tamfu*, a federal prisoner filed a habeas petition under § 2241 to challenge "the

13

conditions of his confinement" at his holding unit. 54 F. App'x at 408. He argued "that a recent transfer . . . did not render his claims moot because he sought declaratory relief and the respondents could transfer him back to [that unit]." *Id*. The Fifth Circuit found the argument "speculative and without merit." *Id*.

Unquestionably, neither *Hernandez* nor *Tamfu* involved pandemic-type conditions that might exist in both facilities, but that does not change the fact that the petition in this case only relates to COVID-19 conditions at STDC. After Petitioner's transfer, there is no basis to address those conditions. While there may be circumstances where the transfer of an immigration detainee to another holding facility does not moot habeas claims related to COVID-19, this case does not present such circumstances. Thus, even though a petitioner's transfer does not generally render habeas claims moot, it does when the request for release is premised upon conditions of confinement at a specific facility.

Although Petitioner does argue that she "should be released from ICE detention" generally, *see* Pet. ¶¶ 78-88, the argument is based on both her prolonged detention and her exposure to COVID-19 at STDC. And although she argues that the Court has authority to release her to vindicate her Fifth Amendment rights, *see id*. ¶¶ 106-11, her claims relating to COVID-19 all relate to her former holding facility, STDC. Petitioner's transfer provided her requested relief from the COVID-19 conditions present at STDC and rendered her COVID-19 claims moot. *Endo* does not dictate a different finding. Furthermore, while Petitioner's briefing attempts to shift her COVID-19 claims to her new detention facility, her original petition did not do so. Nor could it properly do so. Even if a habeas claim may be premised on conditions of confinement – a proposition not determined by this Court – such claims are appropriately limited to the specific holding facility.

Additionally, although petitioners may amend or supplement their petitions "as provided in the rules of procedure applicable to civil actions," 28 U.S.C. § 2242, they are still constrained

14

as to the claims they may properly assert. The Fifth Circuit has "firmly stated that the district of incarceration is the only district that has jurisdiction to entertain a [petitioner's] § 2241 petition." *Lee v. Wetzel*, 244 F.3d 370, 373 (5th Cir. 2001). This principle is so firmly entrenched that the district courts lack discretion to transfer a § 2241 petition to a district where the petitioner is not held. *Id*. This principle stems from the authority conferred on the federal courts through § 2241(a) "to grant writs of habeas corpus 'within their respective jurisdictions.'" *Id*. This means "nothing more than that the court issuing the writ have jurisdiction over the custodian." *Padilla*, 542 U.S. at 442 (2004). And this "proviso," when combined with the "immediate custodian rule," forms the following simple rule: "Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Id*. at 447.

Because Petitioner is no longer detained in this district, the "territorial jurisdiction" rule appears sufficient to disallow any amendment to specifically challenge the COVID-19 conditions at Petitioner's current holding facility in the Southern District of Texas. *See Dada v. Witte*, No. CV 20-1093, 2020 WL 1674129, at *2-3 (E.D. La. Apr. 6, 2020) (recognizing some uncertainty regarding the proper respondent while also recognizing that the district of detention undoubtedly has jurisdiction to entertain the § 2241 petition). As was the case in the Eastern District of Louisiana, this Court sees no "benefit or necessity, for this Court to reach out beyond its territorial limits to exercise jurisdiction over" COVID-19 conditions that may or may not exist at Petitioner's current holding facility in a different district. *See id.*

Indeed, the simple rule set out in *Padilla*, "serves the important purpose of preventing forum shopping by habeas petitioners." 542 U.S. at 447. Of course, the transfer of Petitioner is clearly not a form of forum shopping by Petitioner. But allowing Petitioner to amend her petition to now challenge her detention based on COVID-19 conditions of her current detention facility seems to

allow similar overreaching by theoretically permitting a distantly removed court to issue a writ related to alleged unconstitutional detention conditions in a different district. The Court can discern no significant disability to Petitioner in requiring her to pursue her COVID-19 claims in the Southern District of Texas where she is currently detained.

Although Petitioner's transfer rendered some claims moot, it did not moot her claim of prolonged detention. By filing her immigration habeas petition while being detained within the territorial confines of the United States District Courts for the Western District of Texas and naming the warden at her detention facility, Petitioner "properly complied with habeas procedure." *See Griffin v. Ebbert*, 751 F.3d 288, 290 (5th Cir. 2014) (citing *Padilla*, 542 U.S. at 434-35). Moreover, "[j]urisdiction attached on that initial filing for habeas corpus relief, and it was not destroyed by the transfer of petitioner and accompanying custodial change." *Id.* Although the transfer "may have given both courts concurrent jurisdiction, it did not destroy the power of th[is] District court to rule in [t]his case." *McClure v. Hopper*, 577 F.2d 938, 940 (5th Cir. 1978). With respect to typical habeas relief, "the question becomes one of the appropriateness of the forum," not mootness. *Id.*

Petitioner also seems to argue that her COVID-19 claims are not moot because others may suffer under such conditions. But it is indisputable that her transfer deprives her of a personal stake in continuing to litigate the conditions of confinement at STDC. To the extent, she desires to challenge COVID-19 conditions at her current detention facility, she must pursue such action in the Southern District of Texas.

### 2. 8 U.S.C. § 1252

Respondents also argue that 8 U.S.C. § 1252 precludes this Court from reviewing the decision to deny Petitioner parole. Petitioner states that Respondents misstate the nature of this claim. She asserts that she is not challenging any denial of parole with respect to her prolonged detention

claim. She also provides reasons why various provisions of § 1252 do not apply under her circumstances. In reply, Respondents appear to abandon their argument based upon § 1252. For the reasons Petitioner states in her response to the motion to dismiss, the Court finds that the cited statute does not deprive this Court of jurisdiction over the prolonged detention claim.

### 3. Jurisdictional Summary

For the reasons stated herein, the Court finds all claims based on COVID-19 – whether brought under habeas or otherwise – moot based upon the transfer of Petitioner to a different detention facility. The Court thus lacks jurisdiction over those claims. But neither the transfer nor other circumstance deprives this Court of habeas jurisdiction over the prolonged detention claim.

## B. Rule 12(b)(6)

Pursuant to Fed. R. Civ. P. 12(b)(6), Respondents seek to dismiss the prolonged detention claim asserted in this action. Because Petitioner's transfer has rendered all non-habeas claims moot, habeas provides the only current basis for this claim. And because Habeas Rule 1(a) does not cover the habeas petition in this case, the Court may apply the Habeas Rules to this petition as permitted by Habeas Rule 1(b). Furthermore, the Court finds that use of Rule 12(b)(6) in this habeas context is inconsistent with the habeas rules. *See Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 269 n.14 (1978); *Miramontes v. Driver*, 243 F. App'x 855, 856 (5th Cir. 2007) (per curiam); *Odom v. West*, 174 F.3d 198, 198 (5th Cir. 1999) (per curiam).

Habeas Rule 2 and 28 U.S.C. § 2242 govern the format for applications or petitions for writ of habeas corpus. Habeas Rule 4 establishes an initial review procedure followed by an order for "the respondent to file an answer, motion, or other response, within a fixed time, or to take other action the judge may order." And once the Court orders the respondent to file an answer, Habeas Rule 5 controls the required content of the answer and any reply. A habeas proceeding "provides for a swift, flexible, and summary determination" of asserted claims unencumbered "by

the full panoply of the Federal Rules of Civil Procedure," unlike a non-habeas proceeding, "with its discovery rules and other procedural formalities, [which] can take a significant amount of time, very frequently longer than a federal habeas corpus proceeding." *Preiser v. Rodriguez*, 411 U.S. 475, 495-96 (1973).

In contrast, Fed. R. Civ. P. 8 provides the general rules of pleading and Rule 8(a)(2) requires any pleading that states a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) permits parties to move to dismiss for "failure to state a claim upon which relief can be granted." Such motions require the courts to determine whether the party asserting a claim has complied with Rule 8(a)(2). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-57 (2007). And because Rule 7(a) identifies the only seven pleadings allowed under the Federal Rules of Civil Procedure and does not list a petition for writ of habeas corpus as a pleading, it naturally follows that neither Rule 8 nor Rule 12(b)(6) apply to habeas petitions.[8]

Furthermore, in the Rule 12(b)(6) context, the focus is not on whether the asserting party will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *See id.* at 563 n.8. But the focus in habeas is precisely whether the petitioner is entitled to relief, not whether he or she can proceed to the next stage of the litigation. In the habeas context, the courts preliminarily examine the sufficiency of the claims through Habeas Rule 4 and, if the petition is not dismissed, they order the respondent to provide an answer or other appropriate response. In the habeas context, courts do not determine whether the petition has

---

[8] Because exhaustion of administrative remedies is not before it, the Court makes no determination as to whether an exception should be made to permit a Rule 12(b)(6) motion to dismiss on that basis. The Court notes, however, that Habeas Rule 5(b) specifically directs that an answer to a petition for writ of habeas corpus state whether any claim is barred by a failure to exhaust. And Habeas Rule 4 provides sufficient judicial flexibility to permit a pre-answer consideration of exhaustion should the Court order a motion, other response, or other action to address exhaustion.

stated sufficient factual allegations through the lens of a Rule 12(b)(6) motion.

Given the statutory framework for habeas petitions, the Habeas Rules, the briefing on the motion to dismiss, and the inconsistency of Rule 12(b)(6) with the habeas rules and statutory framework, the Court denies the motion to dismiss to the extent it is premised on Rule 12(b)(6).

## C. <u>Summary Judgment</u>

Some courts construe a Rule 12(b)(6) motion in the habeas context as one for summary judgment or convert the motion to one for summary judgment based upon evidence presented outside the pleading. But as already mentioned, Rule 7(a) identifies pleadings and does not include a petition for habeas corpus. And to rely on the conversion mechanism of Fed. R. Civ. P. 12(d) in this context requires a proper motion under Rule 12(b)(6).

The Court recognizes that "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000); *accord Virani v. Huron*, No. SA-19-CV-00499-ESC, 2020 WL 1333172, at *3 (W.D. Tex. Mar. 23, 2020); *Ashok v. Price*, No. EP-19-CV-00160-PRM, 2019 WL 4702637, at *3 (W.D. Tex. Sept. 26, 2019); *Chukwu v. Price*, No. EP-17-CV-174-PRM, 2017 WL 8728592, at *3 (W.D. Tex. Aug. 24, 2017). But Rule 56 "applies only to the extent that it does not conflict with the habeas rules." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004); *accord Pond v. Davis*, No. H-13-1300, 2019 WL 4644836, at *2 (S.D. Tex. Sept. 24, 2019) (appeal filed). If some aspect of the summary judgment process conflicts with the habeas process, then the habeas process controls. *See Smith*, 311 F.3d at 668. Furthermore, the summary judgment process may not result in a complete resolution of the habeas petition. *See Virani*, 2020 WL 1333172, at *4 (requiring additional proceedings when court partially denied the respondents' motion for summary judgment).

Although Rule 12(b)(6) motions to dismiss and motions for summary judgment serve the same general broad purpose to dismiss claims or an entire action, they differ in procedure as well as substance. When parties move to dismiss under Rule 12(b)(6) they typically do not expect the motion to be construed as one for summary judgment. Similarly, a response to a motion to dismiss is substantively different than a response to a motion for summary judgment. The differences between these types of motions provide ample reason to decline to construe a motion to dismiss as one for summary judgment.

Furthermore, while motions for summary judgment may be used in the habeas context, their use may not be the most prudent way to address a habeas petition. Moreover, their use is expressly subject to the Court's discretion and direction provided in accordance with Habeas Rule 4. After conducting the preliminary review required by Habeas Rule 4, the Court serves the petition and issues an order directing "the respondent to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." This order controls the subsequent filings and guides the habeas process through completion. Habeas Rule 5 comes into play when the Court orders an answer.

When the Court ordered the Petition served in this case, it ordered Respondents to file an unspecified response. It thus left the precise nature of the filing to the discretion of Respondents. Respondents chose to respond with their motion to dismiss. The Court will not disturb that by now treating the motion as one for summary judgment. Although Respondents' chosen response thus delays resolution of the merits of Petitioner's prolonged detention claim, such delay at least in part stems from Petitioner commencing this action under both habeas and federal question jurisdiction. The motion, furthermore, properly raised and resolved jurisdictional issues.

## IV. OTHER MATTERS

In its order serving this action, the Court added Chad Wolf as a respondent. In response to

the motion, Petitioner points out that she did not name him as a party. It thus appears that Petitioner wants him removed as a respondent. Because Petitioner did not name Mr. Wolf and wants him removed, the Court directs the Clerk of Court to remove Mr. Wolf as a respondent in this case. The Court leaves all other named respondents because no party has questioned their presence in this action.

In response to the motion to dismiss, Petitioner argues that, in cases of prolonged detention, due process "requires that the government release, or at a minimum, provide bond hearings." ECF No. 12 at 16. In their reply brief, Respondents argue that the failure to request a bond hearing in the Petition is sufficient reason to find that the procedural due process claim lacks merit. *See* ECF No. 13 at 4-5. Even if this requested relief must be in the filed petition, a matter that the Court declines to consider at the moment, it is certainly a matter that can be added to the petition through a proper amendment.

Although Petitioner's prolonged detention claim deserves prompt attention, her COVID-19 claim provided the emergency nature of this action. With that claim no longer in this case, the Court concludes that the best course for this case is as follows:

1. Within three days of this Memorandum Opinion and Order, Petitioner shall notify this Court whether she intends to pursue her COVID-19 claims in the Southern District of Texas and whether she intends to simultaneously pursue her prolonged detention claim there. Given the significant differences between the two claims, they may proceed separately in the two courts. But the Court also sees some efficiencies for Petitioner to pursue them in the same court. Unless Petitioner decides to forego this action by filing a notice or stipulation of dismissal in accordance with Fed. R. Civ. P. 41, this Court will retain this case through resolution of the one remaining habeas claim. But in no event should Petitioner attempt to pursue her current prolonged detention claim in two separate courts.

21

2. Within twenty-eight days of this Memorandum Opinion and Order, Plaintiff shall file an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. The Amended Petition shall be limited to the prolonged detention claim currently at issue in this action, but Petitioner may add her request for bond hearing to the requested relief. She shall provide all information and evidence that she wants the Court to consider in determining her habeas application.

3. Within fourteen days of the filing of the Amended Petition, Respondents shall file an Answer to Amended Petition, answering in substance as required by Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts (made applicable to this § 2241 action through Habeas Rule 1(b)). In pertinent part, Rule 5 states: "The answer must address the allegations in the petition." Although Rule 5 also provides that the answer must state whether any claim is subject to various defenses, Respondents have asserted none of those defenses and they appear inapplicable to this action. Even if Respondents asserts a defense in the Answer, they must answer in substance to the allegations of the Amended Petition. Additionally, Respondents' Answer must comply with Rule 5(c) and (d) as if those provisions addressed transcripts, recordings, briefs, and opinions related to any immigration or bond proceedings concerning Petitioner.

By ordering an Answer, the Court expressly removes any discretion for Respondents to file a dispositive motion or other response to the Amended Petition. The Court will consider and determine the prolonged detention issue on the Amended Petition, the Answer, and any reply, hearing, or expansion of the record. The filing of a motion instead of an answer may result in the summary denial of the motion.

4. Within fourteen days of the filing of Respondents' Answer, Petitioner may file a reply brief. Any reply must be limited to the arguments raised in Respondents' Answer and shall not include any new allegations of fact or new grounds for relief.

5. Except for a joint motion, any motion for extension of time will be disfavored. Any such

motion based on the unavailability of a transcript shall include an affidavit from the court reporter stating when the request for transcript was made, why the transcript is unavailable, and the additional time necessary to file the completed transcript.

## V. CONCLUSION

For the foregoing reasons the Court **GRANTS in part and DENIES in part** Respondents' Motion to Dismiss the Habeas Petition (ECF No. 11). It finds some claims moot and thus dismisses them pursuant to Fed. R. Civ. P. 12(b)(1). But it further finds that Petitioner's claim of prolonged detention remains live and not subject to dismissal under Rule 12(b)(1). Additionally, it finds the motion improper to the extent Respondents move for dismissal under Rule 12(b)(6). Given the dismissal of half the habeas claims and all non-habeas claims, the Court has set a briefing schedule for an amended petition, an answer to the amended petition, and a reply to the answer.

**SIGNED this 18th day of June 2020.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**